UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEE POWELL, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Case No. 4:21-CV-02208 |
| MARTIN #9327, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Michael Lee Powell filed a civil rights complaint alleging that the Defendants refused or delayed medical treatment after arresting Powell. (Dkt. No. 1 at 3, 4). He seeks monetary relief. (*Id*. at 4).

On June 16, 2022, the Court dismissed Powell's claims against Don Sowell. (Dkt. No. 20). The remaining Defendant, Crystal Martin, filed a motion for summary judgment and subsequently amended the motion. (*See* Dkt. Nos. 37 and 38). Powell has not responded to either the original or the amended motion. For the following reasons, the amended motion for summary judgment, (Dkt. No. 38), is **GRANTED**, and the Complaint, (Dkt. No. 1), is **DISMISSED WITH PREJUDICE**.

### I.     BACKGROUND

Defendant Crystal Martin is a police officer in Navasota, Texas. On February 25, 2021, Martin had been an officer for nine weeks and was working under the supervision of her field training supervisor, Michael Stover. (Dkt. No. 38-1 at 1). At approximately 1:00 a.m., Martin and Stover received a call about suspicious activity at a storage facility.

They responded and encountered Powell and another suspect. (*Id.* at 1–2). After Powell identified himself to the officers, they ran a warrant check and learned that Powell was subject to felony arrest warrants. (*Id.* at 2). The officers arrested him. (*Id.*).

About seventeen minutes after the initial encounter, Powell complained that he was dizzy. (*Id.*). About three minutes later, the officers transported Powell to the emergency room at Grimes County Hospital, arriving in about six minutes. (*Id.* at 3). Powell told Stover that he had heart problems. (*Id.*).

The officers led Powell into an examination room, where Powell engaged in small talk and did not complain of pain or exhibit medical distress. (*Id.*). The emergency room doctor noted that Powell was not taking his prescribed medication for a heart condition, and that his EKG looked worse than a previous EKG. (*Id.*). Approximately twenty minutes after their arrival at the hospital, a nurse administered medication to Powell, including nitroglycerine to increase blood flow to his heart. (*Id.* at 4).

About thirty minutes later, the doctor returned and recommended that Powell be transferred to a hospital in College Station for further evaluation due to the deterioration shown in the EKG. (*Id.*). The doctor did not state that this was an emergency situation or that Powell would suffer any severe pain if brought to jail instead of being immediately transferred to the College Station hospital. (*Id.*).

Stover told Martin that their superiors instructed them to take Powell to the county jail. (*Id.* at 5). Martin handcuffed Powell and the officers placed him in the backseat of their car. While Powell complained about being taken to jail instead of the hospital, he did not complain about any symptoms. (*Id.*). Martin states that she knew from her

2

previous employment working for the prison system that jails typically have trained medical personnel on staff who could provide any needed care to Powell or have him sent to the hospital if necessary. (*Id.* at 6). Martin did not see Powell after delivering him to the jail. (*Id.*).

Jail and medical records show that Powell was hostile to a jail nurse who tried to examine him the following morning. (Dkt. No. 19 at 3). Several hours later, the nurse again attempted, this time successfully, to assess Powell. His blood pressure was 238/130 and he said that he was dizzy and had a headache. (*Id.*). Powell was again sent to the emergency room. (*Id.*). Based on his EKG and other indicators, it was again recommended that Powell be transferred to College Station for further evaluation by a cardiologist. (*Id.* at 3-4).

Powell was transferred, and admitted to the hospital in College Station that night. (*Id.* at 63). His blood pressure had come down to 141/89, and he was given medication to treat his dizziness and chest pains. (*Id.* at 64–65).

Powell was released from the hospital the following day after a cardiology evaluation. The discharge summary states that no invasive intervention was called for at that time, and Powell would be treated with medication. (*Id.* at 69–70). Powell returned to the Grimes County jail the same day. (*Id.* at 57–58).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  Once the movant presents evidence demonstrating entitlement to summary judgment, the nonmovant must present specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

> If the movant . . . meet[s] th[e] burden [of demonstrating the absence of a genuine issue of material fact], the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.
>
> This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by "unsubstantiated assertions, or by only a scintilla of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotation marks omitted).

**III.    ANALYSIS**

Powell contends that Martin's actions and omissions violated his Eighth Amendment rights. (Dkt. No. 1 at 6). Because Powell was not a convict, but an arrestee, his right to medical care is governed by the Fourteenth, not the Eighth Amendment. *See, e.g.*, *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). An arrestee has the same right to necessary medical care as a pretrial detainee. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996). A pretrial detainee or arrestee alleging deliberate indifference must show that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).

The undisputed evidence shows that Martin, upon learning that Powell did not feel well, promptly transported him to a hospital where he received care. While the emergency room doctor recommended further evaluation, he did not indicate that Powell's condition required immediate attention, and Martin knew that there would be trained medical personnel at the jail to provide or arrange for any needed care. (Dkt. No. 38 at 2–5). When Powell again exhibited symptoms, he was sent to the hospital and received further evaluation. (Dkt. No. 19 at 3-4, 63–70). The undisputed facts show that Martin obtained medical care for Powell when he exhibited symptoms, and had no reason

5

to infer that there was a serious risk of harm from Powell's condition following his release from the Grimes County Hospital emergency room. In light of the care that Martin obtained for Powell and the fact that she had no reason to believe that he needed any further immediate medical attention, Martin was not deliberately indifferent to Powell's medical needs. She is entitled to summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Martin's Amended Motion for Summary Judgment, (Dkt. No. 38), and this case is **DISMISSED WITH PREJUDICE**. All other pending motions are **DENIED AS MOOT**. A final judgment will be entered separately.

It is SO ORDERED.

Signed on January 16, 2024.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**